***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The employee is Teresa O. Lyda, and she was an employee of defendant-employer on February 16, 2000.
2. The employer is the Henderson County Public Schools.
3. At the time of the incident giving rise to this claim, defendant-employer was self-insured for this risk and with claims being administered by Key Risk Management Services.
4. On February 16, 2000, defendant-employer regularly employed three or more employees and is bound by the North Carolina Workers' Compensation Act.
5. An employer-employee relationship existed between defendant-employer and plaintiff-employee on February 16, 2000, the date of the injury.
6. Plaintiff's claim is for an injury to her neck and shoulder, which said claim defendant has accepted as compensable.
7. Plaintiff filed a Motion for Approval of Medical Treatment on November 30, 2001, wherein she requested payment for medical treatment provided by Dr. Robert Smith; expenses related to physical therapy as ordered by Dr. Smith; and continued evaluation and treatment by Dr. Smith pursuant to N.C. Gen. Stat. § 97-25.
8. At the hearing, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2).
9. The depositions of Dr. Robert Smith and Mr. C. Steven Rogers, P.T. have been submitted and received into evidence.
10. At the hearing before the deputy commissioner, plaintiff submitted the following:
 a. An April 17, 2001 Correspondence to Key Risk, which was admitted into the record, and marked as Plaintiff's Exhibit (3);
 b. A July 2, 2001 Correspondence to Key Risk, which was admitted into the record, and marked as Plaintiff's Exhibit (4), and;
 c. A March 28, 2001 Correspondence from Dr. Daniel W. Hankley, which was admitted into the record, and marked as Plaintiff's Exhibit (5).
11. The issues to be determined are as follows:
 a. whether the Industrial Commission approves of plaintiff's choice of Dr. Robert Smith to provide her care and assume charge of her case;
 b. whether defendant failed to direct care as required by N.C. Gen. Stat. § 97-25, and;
 c. whether the medical care provided by Dr. Robert Smith has and will serve to provide relief, effect a cure or lessen the period of disability.
 ***********
Based upon the foregoing Stipulations and evidence of record, the Full Commission enters following:
 FINDINGS OF FACT
1. Plaintiff worked as a secretary for defendant-employer in Henderson County. On February 16, 2000 plaintiff injured her right arm, her neck and her upper back as she attempted to lift a trash bag out of a large rolling garbage can at Hendersonville Elementary School.
2. On December 5, 2000, defendant accepted the compensability of plaintiff's injury and claim through the filing of an Industrial Commission Form 60.
3. Following her injury, plaintiff reported the incident to defendant, and she was referred to Dr. John B. Lange at the Western Occupational Health Center in Hendersonville. Dr. Lange prescribed a short course of physical therapy, and prescribed anti-inflammatory medication. After this conservative course of treatment, plaintiff continued to experience pain.
4. Defendant then referred plaintiff to Dr. Larry Kroll, an orthopaedic specialist, in November 2000. Dr. Kroll prescribed physical therapy, medications and began diagnostic testing. Dr. Kroll retired in December 2000, and plaintiff was eventually referred to Dr. Charles R. Shields, a physiatrist, a physician specializing in physical medicine and rehabilitation.
5. Dr. Shields initially examined plaintiff on March 7, 2001, and diagnosed her as having chronic pain syndrome, neck and shoulder myalgias with right AC joint degenerative changes. Plaintiff reported to Dr. Shields that she had previously been at a physical activity level of 99% but now was at a physical activity level of 10%. Dr. Shields continued Dr. Kroll's prescription for plaintiff to take Darvocet as needed and added ½ tablet Norflex to be taken in the morning and ½ tablet to be taken in the evening. Dr. Shields began training plaintiff in breathing/relaxation techniques. He indicated that once he had more information regarding the pathologies he would begin strengthening exercises in his office, then send plaintiff to physical therapy if needed. Dr. Shields released plaintiff at maximum medical improvement on April 26, 2001 stating in his release note that plaintiff "has been at maximum medical improvement for some time but just needed help and encouragement to ease back into work." He further noted that there was no physical reason to warrant further therapy, that there was obvious symptom magnification and he could not find any focal myofacial points. Dr. Shields assigned 2% permanent partial impairment rating to plaintiff's right arm. He recommended a phased return to work with plaintiff beginning to work 3 hours per day then slowly increasing 1 hour per week until she reached 40 hours a week. Plaintiff was restricted to no activity at or above shoulder level except for occasional lifting of objects less than or equal to 5 pounds.
6. In late March 2001, plaintiff developed an ailment unrelated to her work-place injury. For this ailment, on March 26, 2001, plaintiff consulted with her primary care physician, Dr. Robert Smith. Plaintiff gave Dr. Smith a history of the medications that she had been prescribed by Dr. Shields. Plaintiff indicated she was not pleased with her response to the medications and she requested Dr. Smith change her medication and "do something else." Dr. Smith changed plaintiff's medication at her request. Dr. Smith ordered physical therapy based on a presumptive diagnosis of a strained neck, shoulder and back, as well as plaintiff's claim she had benefitted with prior physical therapy. Dr. Smith made these changes solely based on the history given him by plaintiff and did not consult her prior physician, Dr. Knoll or Dr. Shields, who was still treating plaintiff at this time.
7. On April 17, 2001, counsel for plaintiff sent a correspondence to defendant's adjuster requesting the authorization of treatment by Dr. Smith and coverage for physical therapy that had been ordered. This correspondence followed a telephone conversation between the same adjuster and counsel for plaintiff in which the adjuster had refused to authorize said treatment as plaintiff had seen three doctors, including a physiatrist and an orthopedic specialist. Further, her last authorized treating physician, Dr. Shield, had released plaintiff at maximum medical improvement without any recommendation for further physical therapy. The Full Commission gives greater weight to the opinions of Dr. Shields that plaintiff on April 26, 2001 reached the end of her healing period for her compensable injury of February 16, 2000 than to the opinions of Dr. Smith, a family physician that plaintiff continued to require treatment.
8. Despite the notification that treatment by Dr. Smith would not be authorized, plaintiff began the physical therapy on April 23, 2001.
9. Dr. Smith referred plaintiff for a functional capacity evaluation which was performed by Duncan A. Sharrits, Physical Therapsit, on June 5, 2001. It is noted in the summary that plaintiff did not demonstrate any symptom/disability exaggeration at this evaluation and that plaintiff would benefit from a physical therapy program. The Full Commission gives greater weight to the opinion of Dr. Shields, the authorized treating physician, regarding plaintiff's need for physical therapy and notation of symptom magnification as he treated plaintiff over a period of time as opposed to Mr. Sharrits, who saw plaintiff for one evaluation.
10. On March 28, 2002 a letter from Dr. Daniel Hankley of Blue Ridge Bone and Joint Clinic in Asheville indicates that he reviewed the results of plaintiff's functional capacity of June 5, 2001 as well as the job description for the purpose of determining if plaintiff was capable of undertaking a job being offered by defendant. Based solely on this information he writes "I believe the she (plaintiff) is able to perform that job within the restrictions of the functional capacity evaluation. I do not think I would recommend further physical therapy at this point." Although Dr. Hankley writes in the present tense, he is referring to the date of the functional capacity evaluation of June 5, 2001 as this is the only material on which he could have based his opinion regarding plaintiff's need for physical therapy.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on February 16, 2000. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have defendant pay for all medical treatments that are related to her compensable injury so long as such treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. However, Dr. Shields clearly stated that plaintiff is not in need of further or ongoing medical treatment. Accordingly, plaintiff has not raised good grounds to change her authorized treating physician to Dr. Smith. N.C. Gen. Stat. § 97-25.
3. Defendant did not unreasonably refuse to provide the reasonable and necessary medical treatment as prescribed by plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's motion to change treating physician to Dr. Smith is denied.
2. Each side shall bear its own costs.
This the 31st day of August 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER